IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


HAROLD J. NEUKOM,              )
                              )
                              )
              Plaintiff,       )    Civil No. 05-924-JE
                              )
         v.                   )    OPINION AND ORDER
                              )
COLUMBIA STEEL CASTING CO.,    )
an Oregon corporation,         )
                              )
              Defendant.       )
_____)


        Richard C. Busse
        Busse & Hunt
        621 S.W. Morrison Street, Suite 521
        Portland, OR 97205
             Attorney for Plaintiff

        Thomas M. Triplett
        Roman D. Hernandez
        Schwabe, Williamson & Wyatt, P.C.
        Pacwest Center, Suites 1500-1900
        11211 S.W. 5th Avenue
        Portland, OR 97204-3795
             Attorneys for Defendant


1 - OPINION AND ORDER

JELDERKS, Magistrate Judge:

Plaintiff Harold Neukon brings this action alleging unlawful age discrimination against his former employer, Columbia Steel Casting Co., Inc. (Columbia).  Defendant Columbia moves for summary judgment.  The motion is granted in part and denied in part.

**BACKGROUND**

Defendant Columbia is a foundry operation that manufactures iron and steel replacement parts for equipment by melting and pouring scrap metal into molds.  According to one of its technical bulletins, defendant Columbia "has designed and produced parts for virtually every type of crushing, digging, grinding and shredding device in common use in the Western Hemisphere through the turn of the century."

Defendant Columbia's Product Engineering Department is divided into five work units.  These are the Gyratory, Jaw, Roll, and Cone Crusher Unit; the Dragline, Chain, and Ground Engagement Unit; the Coal and Cement Plant Unit; the Shredder Parts Unit; and the Special Products Unit.  These work groups design and modify products that defendant and its competitors manufacture for use in a variety of commercial industries.

Plaintiff was born on January 1, 1949, and was 30 years old when he first began working for defendant Columbia in 1979 as an engineer in the Dragline, Chain, and Ground Engagement Unit.  Plaintiff had five years experience with coal mining

equipment at ESCO corporation before he started working for defendant.

Plaintiff worked in the Dragline Unit for seventeen years. In that Unit, he worked under Chief Engineer Bruce Johnson. Johnson testified that plaintiff was a "good, faithful employee," and that he had no complaints about him.

Plaintiff was promoted from a staff product engineer position to a manager position in the Dragline Unit in 1994 or 1995. He voluntarily resigned his position in April, 1996, and did not seek other employment for more than a year.

In February, 1998, at the age of 49, plaintiff re-applied for work with defendant Columbia. He was re-hired by Mr. Hobart Bird, the company's Chief Executive Officer and Chairman of the Board of Directors, who was approximately 75 years old at the time. When he was re-hired, plaintiff did not return to work as a manager, but instead worked as a staff product engineer in the Coal and Cement Plant Unit. He worked in that position until he was laid off on April 30, 2003.

Plaintiff has testified that McNiven, the manager of the Coal and Cement Unit, gave him favorable feedback on his work, and never told him he was asking too many questions or taking up to much of McNiven's time. Plaintiff also testified that McNiven told him once, about a year before plaintiff was laid off, that plaintiff had taken too long to complete a two or three day project, but that McNiven had never made such a comment before or since that time.

Defendant Columbia experienced a significant reduction in its business during the general business decline following September 11, 2001, and reduced its work force by 18% between October, 2001, and the end of October, 2003. Bird decided that economic conditions affecting the company required layoffs in the Product Engineering Department, and plaintiff and three other staff product engineers were laid off in April, 2003. All of these product engineers were from different work units, and no work unit managers were laid off. The other three product engineers who were laid off were: Karl Kruasse, who worked in the Gyratory, Jaw, Roll, and Cone Crusher Unit; Mike Perez, who worked in the Shredder Parts Unit; and Bret Young, who worked in the Special Products Unit. David Randall, defendant's personnel director, has testified that, when the layoffs were made, the company intended to keep the best qualified employees. The employees who were laid off and not later rehired had an average of 15.7 years of experience.

Bird told plaintiff he was being laid off. Plaintiff has testified that Bird told him that he was being laid off because business was down, and not because of his work. Plaintiff also testified that Bird told him that he would be rehired as conditions improved and employment became open. Johnson, who attended the meeting at which plaintiff was laid off, has testified that Bird said at the meeting that plaintiff's work performance had nothing to do with the

layoff, and that Johnson himself told plaintiff at the meeting that his work performance was very satisfactory.

Though no layoffs were made in the Dragline, Chain, and Ground Engagement Unit in April, 2003, that Unit was downsized in the winter of 2004, when Mike Moehnke, the Unit Manager, was transferred to a different position, and Anthony Miotke, the oldest employee in that Unit, was promoted to the Manager position.

Since plaintiff's layoff in April, 2003, the Coal and Cement Plant Unit in which plaintiff worked after he was rehired in 1998 has remained staffed by Scott McNiven, who is the manager, and Chuck Hergert. McNiven is 18 months younger than plaintiff, and Hergert is 6 months younger than plaintiff. In July, 2004, several months after defendant Columbia received notice that plaintiff had filed a claim of age discrimination with the Oregon Bureau of Labor and Industries (BOLI), defendant Columbia hired Dale Gennett, who was 60 years old at the time, to work half time in the Coal and Cement Plant Unit and half time in the Special Products Unit. Gennett was terminated for unsatisfactory work performance in February, 2005, and the combination position that he held has not been filled since that time.

At the time of the April, 2003 layoff, all of the product engineers in three of the five work units, including the managers, were over 40 years old. Three of the four product engineers employed in the Jaw, Roll, and Crane Crusher Unit

5 - OPINION AND ORDER

before the layoff were over the age of 44.  All three of the
engineers employed in the Special Products Unit before the
layoff were between the ages of 45 and 54 years old before the
layoff.  The person laid off in that unit was 54 years old,
and the staff product engineer who was retained was nearly 53
years old.  In plaintiff's Coal and Cement Unit, all of the
product engineers were over the age of 50 at the time of the
layoff.  The manager of the group was 52 years old, and the
other product engineer, who was retained, was 53 years old,
and was less than six months younger than plaintiff.  All of
the engineers in the Shredder Parts Unit were under the age of
40 at the time of the layoff.  Greg Stegmaier, the manager of
that unit, was not laid off.  Stegmaier was older than Mike
Perez, the engineer laid off from the Shredder Unit, who was
37 years old at the time.

In the fall of 2003, Stegmaier suggested that Perez be
rehired to the Shredder Unit when another engineer was
transferred from that Unit.  Perez, who had five years of
engineering experience, was rehired.  Plaintiff, who had 22
years of experience when he was laid off, has testified that
he could have performed the job for which Perez was rehired.

Bird, defendant's CEO, was the employment decision maker.
As noted above, Bird concluded that layoffs in the Product
Engineering Department were necessary because of economic
conditions.  According to his affidavit and deposition
testimony, Bird selected plaintiff for layoff because he

6 - OPINION AND ORDER

thought plaintiff was the most expendable staff product engineer in plaintiff's work unit. Bird cites information he received from plaintiff's immediate supervisor as the basis of his conclusion that plaintiff was a slow worker who required excessive supervision. Bird testified that McNiven had complained to him that plaintiff worked slowly, repeatedly asked questions to which he should have known the answers, and was unable to work without direct supervision.

After the April, 2003 layoff, McNiven signed a letter of recommendation describing plaintiff as a thorough, conscientious, kind, sincere team player. Bruce Johnson, defendant's vice president and chief engineer until September 2003, signed a letter of recommendation describing plaintiff as hard working, reliable, accurate, and well-liked. Plaintiff drafted the letters. McNiven testified that the letter he signed was truthful and accurate, and that plaintiff had a good work ethic and got along with others, including himself.

McNiven testified that he remarked to Bird that plaintiff was taking up too much of his time. He also testified that plaintiff "asked a lot of questions," that the number of questions plaintiff asked did not diminish over time, and that he had to micromanage plaintiff "somewhat." According to Bird's affidavit, Bird had a more favorable impression of McNiven and Hergert, who were retained in the Coal Unit, than of plaintiff.

Mike Moehnke, former Manager of the Dragline, Chain, and Ground Engagement Unit, testified that, based upon McNiven's comments, he believed that plaintiff was "relatively slow at doing projects and lacked a real strong decision making."  He added that plaintiff was "not known for making drawings fast," and was known for being "very detail oriented."

After he was laid off, and particularly during the months of May and June, 2003, plaintiff informed defendant Columbia that he wanted to be rehired.  In early 2004, plaintiff saw a newspaper advertisement indicating that defendant had an opening for a product engineer, and was seeking someone with experience.  Plaintiff applied for two product engineer positions with defendant Columbia in February and March of 2004.  Plaintiff gave a letter of application and a resume' to Randall, defendant's Personnel and Safety Director, on February 20, 2004.  Randall told plaintiff there were openings in the Dragline Unit for an experienced person and for a new person, and plaintiff said he would apply for both positions. Defendant Columbia asserts that, while one of these positions was in fact in the Dragline Unit, the other was a combined 50% Coal Unit and 50% Special Products Unit position.  Plaintiff asserts that both positions were in the Dragline Unit.

Randall told plaintiff he would contact him within the week.  On March 19, 2004, not having heard from defendant, plaintiff telephoned Randall.  Plaintiff has testified that Randall told him that one position had been filled, and that

Bird was "being quiet" regarding plaintiff's application. Plaintiff also testified that Randall told him they had an opening for a half time position in "Miscellaneous," and a half time position in the Coal Unit.  When plaintiff expressed interest in the remaining position, Randall said that it did not look like plaintiff was going to have the opportunity to return, and that it was time for him to look elsewhere for work.

Defendant Columbia did not rehire plaintiff.  Bird testified that he told Randall that he did not want to "bring back any of [the engineers] that were laid off."  He added that he instead wanted to hire "something better than the ones that we'd laid off."

Plaintiff was not interviewed for the product engineering position in the Dragline Unit where he had first worked for defendant.  Two other applicants, who were both in their 20s, were interviewed, and on March 29, 2004, defendant hired Jesse Fritz for the position.  Fritz, who was 24 years old at the time, was interviewed by at least five of defendant Columbia's employees, including the outgoing and incoming managers of the Dragline Unit, Randall, and Bird.  According to Bird's affidavit, defendant Columbia hired Fritz for that position because Bird "believed that he had a greater upside potential for the company than Plaintiff."  Fritz had never worked in a foundry before, and did not have Dragline or mining equipment experience.  Bryon Boyle, Ph.D., defendant's psychologist,

told Bird that Fritz's test scores were below the mean for engineering applicants with defendant, that his vocabulary was somewhat limited, and that his academic skills did not appear to be as strong as would be expected.  Boyle recommended Fritz with reservations.

Don Falk, defendant's president, testified that when Fritz was hired, defendant was looking for a "draftsman to do the everyday drawings," and that it would take a few years for a newly hired product engineer to get "up to speed" to do field work.  Mike Miotke, the product engineering manager of the Dragline Unit and Fritz's current supervisor, has testified that Fritz is still in training.  A letter under Miotke's name dated January 18, 2004, recounts plaintiff's experience working for defendant, states that plaintiff's "attention to detail and record keeping was essential" to the success of certain projects, and states that Miotke highly recommended plaintiff to prospective employers.  When his deposition was taken, Miotke clarified that plaintiff wrote the letter, which Miotke signed.

Before Fritz was interviewed, Miotke asked Randall whether defendant was going to bring back any of the employees who had been laid off.  Miotke has testified that he believes that Randall said that he did not know if any of the employees who had been laid off would be brought back.  Randall has testified that Miotke asked whether any of the people who had been laid off would be brought back, and specifically asked

whether it would be possible to bring plaintiff back.  Randall
added that Bird had told him that defendant would not hire
back the individuals who had been laid off, and that he told
Miotke that the individuals who had been laid off would not be
rehired.

After he was laid off, plaintiff was not replaced.  He
alleges that he should have been hired to work in the Dragline
Unit instead of the new hire who ultimately filled that
position.  Plaintiff also alleges that he should have been
hired to work in the Shredder Parts Unit in September, 2003,
when Perez, who had been laid off from that unit during the
April, 2003 layoff, was recalled to work there.

Plaintiff has testified that he never heard "ageist"
remarks or comments in defendant's workplace, and that he has
not seen any documents that might infer that defendant sought
to eliminate older workers.  According to his deposition
testimony, plaintiff bases his claim of unlawful age
discrimination on his belief that defendant laid off the
oldest engineers in each work unit during the layoff.

In its response to plaintiff's complaint of age
discrimination to the Bureau of Labor and Industries (BOLI),
defendant Columbia stated that Bird had decided to reduce the
size of the Production Engineering Group in 2003 because
Columbia's business had declined.  Defendant further asserted
that the decision to lay off plaintiff

> was based upon the perception of Mr. Bird,
> an 80 year old man, that Neukom was a slower

worker than Mr. Hergert; that his personality
was grating; and that he had difficulty making
timely decisions.  This is not to demean Mr.
Neukom's skills but rather was a judgment based
upon a comparison with others in his unit.

When his deposition was taken, Bird did not cite plaintiff's

personality as one of the factors in the termination decision,

and stated that, as far as he knew, plaintiff was well liked.

In its responses during the BOLI proceedings, defendant

asserted that the decision to hire Fritz for the position

plaintiff had applied for "was made by the then Unit Manager,

Tony Miotke, in collaboration with others, including Mr.

Bird."  Defendant added that Fritz was "perceived to be the

better applicant given the concerns" about plaintiff it had

noted in the response.

As noted above, Miotke testified that he was not asked to

consider plaintiff for rehire.  Miotke also testified that,

because plaintiff knew the system, he would have considered

him for the position.  In addition, Miotke testified that the

quality of plaintiff's work which he had observed was good,

and that he had sometimes sought plaintiff's advice, and had

found that advice helpful.  Miotke testified that he knew of

no negative comments about plaintiff.

In a determination issued on February 6, 2005, the

Seattle District Office of the United States Equal Employment

Opportunity Commission (EEOC) found that "there is reasonable

cause to believe" plaintiff's charge that defendant unlawfully

discriminated on the basis of age in deciding to hire a

12 - OPINION AND ORDER

younger candidate when plaintiff applied for an open position after being laid off in 2003.

## PLAINTIFF'S CLAIMS

Plaintiff brings two claims.  The first claim alleges that defendant Columbia unlawfully discriminated against him in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b), by terminating him and refusing to recall or rehire him because of his age.  Plaintiff alleges that, when he sought reemployment with defendant, he "was rejected in lieu of a less qualified younger worker and/or workers," and that, "[i]n the meantime another less qualified younger worker and/or workers were recalled to work."

Plaintiff's second claim, which is based upon the same factual allegations, asserts a claim for unlawful age discrimination based upon Oregon statutory law.

## STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case.  Id.  When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond

the pleadings and show that there is a genuine issue for
trial.  Id. at 324.

The substantive law governing a claim or defense
determines whether a fact is material.  T.W. Elec. Serv., Inc.
v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th
Cir. 1987).  Reasonable doubts concerning the existence of a
factual issue should be resolved against the moving party.
Id. at 630-31.  The evidence of the nonmoving party is to be
believed, and all justifiable inferences are to be drawn in
the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255 (1985).  No genuine issue for trial exists,
however, where the record as a whole could not lead the trier
of fact to find for the nonmoving party.  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

As noted above, plaintiff alleges that defendant Columbia
discriminated against him on the basis of his age when it: 1)
laid him off in 2003, and 2) subsequently refused to recall or
rehire him.

I. Federal and state prohibition on age-based discrimination
in employment

The Age Discrimination in Employment Act (ADEA), 29
U.S.C. § 623 et seq., prohibits employers from discriminating
on the basis of age against individuals who are at least 40
years old.  29 U.S.C. §§ 623(a); 631(a).  The ADEA prohibits
employers from terminating an employee or failing to hire an

individual covered by the Act because of the individual's age.
29 U.S.C. § 623(a)(1).

Oregon statutes prohibit employers from discharging or
refusing to hire an individual who is at least 18 years old
because of the individual's age.  ORS 659A.030(1).


II. Defendant's decision to lay off plaintiff in April, 2003

A.  Analytical framework

_____Claims alleging violation of the ADEA are analyzed under
the framework set out in McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973).  See, e.g., Nidds v. Schindler Elevator
Corp., 113 F.3d 912, 917 (9th Cir.1996), cert. denied, 522
U.S. 950 (1997).  Under that framework, a plaintiff must first
establish a prima facie case of discrimination.  If the
plaintiff establishes a prima facie case of discrimination,
the defendant then bears the burden of articulating a
legitimate, nondiscriminatory reason for the adverse
employment action.  If the defendant articulates such a
reason, the plaintiff then bears the burden of demonstrating
that the employer's proffered reason is pretextual, either by
persuading the trier of fact that a discriminatory reason more
"likely motivated the employer or . . . by showing that the
employer's proffered explanation is unworthy of credence."
Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256
(1981).  A plaintiff may show that the employer's proffered
reason is not credible because it is internally inconsistent

or is otherwise not believable.  <u>Chuang v. University of
California, Davis Board of Trustees</u>, 225 F.3d 1115, 1127
(9th Cir. 2000).  If the plaintiff presents evidence that is
sufficient to persuade a jury that the defendant's proffered
reason is false, the jury may infer intentional discrimination
based upon its disbelief of the employer's reason and the
existence of a prima facie case of discrimination.  <u>Nidds</u>,
113 F.3d at 918 n.2.

Though Oregon courts do not follow this "burden-shifting"
analytical approach, "federal courts sitting in diversity must
apply the <u>McDonnell Douglas</u> burden-shifting scheme as a
federal procedural rule."  <u>Snead v. Metropolitan Property &
Casualty Ins. Co.</u>, 237 F.3d 1080, 1095 (9th Cir. 2001), <u>cert.
denied</u>, 534 U.S. 888 (2001).  Accordingly, the "burden
shifting" analysis applies to both plaintiff's federal and
state claims.

In order to establish a prima facie case of unlawful age
discrimination in a termination, a plaintiff generally must
show that he was (1) at least 40 years old; (2) performing his
job in a satisfactory manner; (3) terminated; and (4) replaced
by a substantially younger employee with equal or inferior
qualifications.  <u>Coleman v. The Quaker Oats Co.</u>, 232 F.3d
1271, 1281 (9th Cir. 2000), <u>cert. denied</u>, 533 U.S. 950 (2001).
However, where, as here, the termination occurred in the
context of a general workforce reduction, a plaintiff need not
show that he was replaced, but instead may show "'through

circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination.'"  Id. (quoting Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420-21 (9th Cir. 1990)).  This inference can be established by showing that the employer continued to need the terminated employee's skills and services, because the terminated employee's duties continued to be performed, Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994), or by showing that other employees who were not in the protected class were treated more favorably. Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1994).

B. Discussion

1. Plaintiff's prima facie case

Defendant Columbia here does not dispute that plaintiff was more than 40 years old, was performing his job satisfactorily, and was terminated.  It contends, however, that plaintiff cannot show that his termination occurred under circumstances giving rise to an inference of age discrimination.

Based upon a careful review of the record, I agree that plaintiff cannot establish that the circumstances of his layoff in April 2003 support an inference of age-based discrimination.  As noted above, plaintiff was laid off during a reduction in force that plaintiff concedes was related to a decline in defendant's business following September 11, 2001, and plaintiff testified that his wrongful layoff claim is

based on his belief that the four product engineers who were
laid off were the oldest engineers in each of their four
respective work units.  Plaintiff cannot establish that
defendant had an ongoing need for his services, because he
cannot show that the work he had done was subsequently
performed by another engineer.  Plaintiff was not replaced by
a transferred or new employee, and an employee is not
considered to be replaced during a reduction in force if
another employee is assigned to perform his duties as well as
other duties, or when the work he did is distributed among
other employees who are already performing related work.
Barnes v. GenCorp, Inc., 896 F.2d 1457, 1466 (6th Cir. 1990).

     Plaintiff likewise cannot establish that other product
engineers who were not in the "protected" over-40 class were
treated more favorably.  The layoff in which plaintiff lost
his job was carried out by unit, with each of the four
affected product units losing one product engineer.  All of
the product engineers in the Coal unit where plaintiff worked
were over 50 years old, and the two engineers retained were
only 6 months and 18 months younger than plaintiff.  Plaintiff
therefore cannot establish that engineers in his unit who were
not in the protected class received more favorable treatment.
In addition, assuming that such a showing was not required,
the very slight difference in the ages of the product
engineers in that unit, who were all in the protected class,

would not support any inference that plaintiff's age played a role in the layoff decision.

Analyzing the layoffs in other units likewise will not help plaintiff establish a prima facie case of age discrimination, because a reasonable trier of fact could not conclude from the record here that product engineers in the protected class were treated less favorably.  In the Jaw, Roll and Cone Crusher unit, three of the four product engineers were over the age of 44, and one of the engineers who was retained was almost as old as the engineer who was laid off. All three of the engineers who worked in the Special Products Unit were between 45 and 54 years old:  Though the oldest engineer was laid off, the staff engineer who was retained was almost 53 years old at the time.   All of the engineers in the Shredder Parts unit were under the age of 40, and the engineer who was laid off was not the oldest engineer in that unit. Though none of the product engineers in the Dragline unit were laid off in April 2003, the unit was downsized approximately one year later, when the 34 year old manager was transferred to a sales position, and the oldest person in that unit was promoted to the unit manager position.

The degree of proof required to establish a prima facie ADEA claim "is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis, 26 F.3d 889.  However, plaintiff here has not shown the requisite "circumstantial, statistical, or direct evidence" that he was

laid off under circumstances that support an inference of age discrimination.  Plaintiff has testified that he never heard "ageist" remarks while working for defendant, and he has presented no other direct evidence indicating that age discrimination was a factor in his layoff.  Most of the engineers in the various work units were in the protected class, the differences in ages between those retained and those terminated were generally insignificant, and not all of the engineers laid off were the oldest in the relevant work unit.  Under these circumstances, plaintiff has not produced circumstantial or statistical evidence that will support the inference of discrimination required to make out a prima facie age discrimination case.

2. Defendant's proffered reason for plaintiff's layoff

Even if I concluded that plaintiff could establish a prima facie case of unlawful age-based discrimination, I would grant defendant Columbia's motion for summary judgment as to plaintiff's claim based upon the layoff because plaintiff has not shown evidence supporting the conclusion that defendant's proffered explanation of the termination decision is pretextual.  Defendant Columbia has submitted unrebutted evidence that it reduced its workforce significantly between October 2001 and the end of October 2003 because its business suffered during the post-9/11 business slowdown.  Accordingly, the record would support only the conclusion that plaintiff's

layoff took place during a genuine reduction in force that
reflected defendant's business decision.

Turning to defendant's selection of plaintiff as one of
the four product engineers to be terminated in April 2003,
defendant asserts that Bird, defendant's CEO, thought
plaintiff was the most expendable product engineer in the Coal
Unit.  Defendant asserts that Bird had a more favorable
impression of McNiven, the unit manager, and Hergert, the
other product engineer in the unit, and that Bird "believed
Plaintiff to be a slow worker, to require direct supervision,
and that he was not able to work independently."

As noted above, plaintiff bears the burden of
demonstrating that this proffered reason is pretextual, either
by persuading the trier of fact that a discriminatory reason
more "likely motivated the employer or indirectly by showing
that the employer's proffered explanation is unworthy of
credence." Burdine, 450 U.S. at 256.  Plaintiff must show
"'specific, substantial evidence of pretext.'"  Wallis, 26
F.3d at 890 (quoting Steckl v. Motorola, Inc., 703 F.2d 392,
393 (9th Cir.1983)).

Plaintiff contends that he has demonstrated that
defendant's proffered reason for his termination is not
credible because defendant provided inconsistent and
implausible reasons for selecting him for termination, and had
no documentation to support Bird's assertion that McNiven had
told him that plaintiff worked slowly and required detailed

supervision.  He contends that a jury could find that the reasons defendant has given are false, and that defendant's decision was more likely motivated by his age.

In support of these contentions, plaintiff asserts that Bird told him that he was being laid off because of business circumstances, and not because of his work performance, and that Johnson told him at the time of the layoff that his work performance was very satisfactory.  Plaintiff notes that, in its responses to a BOLI inquiry, defendant asserted that Bird perceived plaintiff to be slower than the other product engineer in his group, thought his personality was "grating," and thought plaintiff "had difficulty making timely decisions."  Plaintiff further notes that, in a BOLI fact-finding conference, defendant cited "skill, ability, and versatility" as the criteria for choosing who would be laid off, and that Bird did not cite plaintiff's personality as a factor when he testified in the present action, but instead testified that, as far as he knew, plaintiff was well-liked. Plaintiff asserts that, if versatility was a factor, he should have been retained because he was one of the few product engineers with experience in more than one work unit, and that his experience in two units would have helped him work in other groups as well.

The record supports plaintiff's assertion that Bird did not cite plaintiff's performance when he was laid off, and that Bird did not cite plaintiff's personality as a factor

when he testified in the present action.  However, plaintiff
has not shown "specific, substantial evidence of pretext," and
there are not sufficient inaccuracies, inconsistencies, or
lack of documentation to support a fact-finder's conclusion
that the proffered reasons for plaintiff's layoff are not
credible, or that plaintiff's layoff more likely resulted from
unlawful age discrimination.  Bird's assertion at the time of
the layoff that plaintiff was not being terminated for poor
performance is consistent with extensive evidence in the
record that the underlying reason for the layoff was a decline
in business following 9/11.  There is no suggestion in the
record that defendant considered plaintiff's performance so
deficient that it would have terminated him if business had
not declined.  Instead, the record supports the conclusion
that, having concluded that defendant needed to lay off
several product engineers, Bird evaluated the relative merits
of the engineers in several units.  Accordingly, Bird's
assertion to plaintiff at the time that he was being
terminated because of business conditions and not because of
performance is fully supported by the record, and does not
suggest that the reasons defendant proffers now are
pretextual.

Defendant's assertion in the BOLI proceedings that
plaintiff had a "grating" personality and the absence of any
such negative reference in this litigation or elsewhere is
insufficient to support the conclusion that defendant's

proffered reasons were pretextual, because there is
substantial evidence that defendant has consistently cited
plaintiff's pace and need for supervision as the major
elements in the layoff decision.  There is also substantial
evidence that Bird's assertion that plaintiff needed too much
supervision is consistent with what plaintiff's manager had
told Bird and at least one other manager before the layoff,
and Bird could have reasonably concluded that an engineer who
needed extensive supervision would not work as quickly as one
who did not.  In addition, Bird could have reasonably
concluded that an engineer who needed extensive supervision
was not as skilled, able, and versatile as some of defendant's
other product engineers.  Moreover, there is evidence that
plaintiff was not known as an engineer who produced drawings
quickly, and that a number of the engineers thought plaintiff
was not a fast worker.

There appears to have been a minor inconsistency in the
reasons given for plaintiff's layoff.  However, the record
supports only the conclusion that business conditions were, as
plaintiff was told, the underlying reason for layoffs in which
plaintiff lost his job.  Defendant has consistently cited
Bird's concern about plaintiff's need for supervision and lack
of speed as reasons for choosing plaintiff as one of the
engineers to be laid off, and the record supports the
conclusion that Bird developed this concern through
conversations with other employees.  Plaintiff has not shown

the existence of evidence that would support the conclusion that defendant's proffered reasons for the layoff were pretexual, and that the layoff was more likely the result of unlawful age discrimination.

Defendant asserts that Bird's role in both deciding to rehire plaintiff when plaintiff was 49 years old and then in selecting him for layoff five years later also raises a strong inference that there was no discriminatory motive behind the layoff decision.  I agree.  The Ninth Circuit Court of Appeals has held that, "where the same actor is responsible for both the hiring and firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996).  Certainly, a plaintiff's presentation of a "strong case of bias" may overcome the "same actor inference" raised when the same decision maker both hires and terminates an employee.  Coghlan v. American Seafoods, Co., LLC, 413 F.3d 1090, 1098 (9th Cir. 2005).  However, this court must take the "strong inference" raised by Bird's decision both to rehire and then to lay off plaintiff a few years later into account in evaluating the pending motion for summary judgment.  See id.

Here, plaintiff has not presented evidence that could overcome this inference as to the claim based upon the layoff. For this reason, and because plaintiff has otherwise failed to

produce evidence supporting the conclusion that defendant's proffered reasons for the layoff decision were pretextual, defendant would be entitled to summary judgment on plaintiff's first claim even if plaintiff could establish a prima facie case of age discrimination.

III. Defendant's decision not to rehire plaintiff following the layoff

Plaintiff alleges that defendant Columbia discriminated against plaintiff on the basis of his age by failing to recall him to work in the Shredder unit in September 2003 and by failing to hire him for another product engineer position in the spring of 2004.

A plaintiff may establish a prima facie case of unlawful age discrimination based upon failure to hire by showing that: 1) he belonged to the protected class; 2) he was qualified for the position for which he applied; 3) he was not hired despite being well qualified; and 4) the employer filled the position with someone sufficiently younger to permit an inference of age discrimination, or filled the position with a substantially younger employee with equal or inferior qualifications.  See Schlitz v. Burlington Northern R.R., 115 F.3d 1407, 1412 (8th Cir. 1997); Coleman, 232 F.3d at 1281.

For the purposes of analyzing the pending motion for summary judgment only, defendant Columbia does not dispute that plaintiff can establish a prima facie case of age discrimination based upon its refusal to recall plaintiff to

work in the Shredder unit in September 2003, and its refusal to hire plaintiff to work in the Dragline, Chain and Ground Engagement unit in February/March 2004.  Defendant contends, however, that plaintiff cannot establish a prima facie case of age discrimination based upon its refusal to hire plaintiff in the combination product engineer position which required 50% of the work in the Special Products unit and 50% of the Coal unit.

A. Reinstatement of Perez in September 2003

    As noted above, in April 2003, at the same time plaintiff was laid off, Perez was laid off from a product engineer position in the Shredder unit which he had held for the previous 5 of the 14 years he worked for defendant.  After Perez was laid off, only two product engineers, Stegmaier, who was the manager, and Delay, worked in the Shredder unit. In September 2003, Delay was transferred to a different department, leaving only Stegmaier in the unit.  Stegmaier has testified that, upon learning that Delay was being transferred, he asked that Perez be brought in to replace Delay in the Shredder unit, and the request was granted. Stegmaier testified that Perez's experience in the unit was important, because it "takes months to years to ... explain all the – all the product so that he can go out on his own and handle it on his own, rather than asking too many questions or relying too much on myself, so – then we both can do work."

Defendant Columbia contends that plaintiff has shown no evidence that could support the inference that the proffered reason for recalling Perez instead of offering the position to plaintiff is pretextual, and that the decision was motivated in part by plaintiff's age. Though this presents a close issue, I disagree. Perez was the youngest of the group of product engineers who were laid off at the same time in April 2003, and is 17 years younger than plaintiff. In addition to this significant age difference, Perez had only 5 years of engineering experience, while plaintiff had 22 years of engineering experience, which included more years of foundry experience than Perez. Under these circumstances, I am satisfied that defendant Columbia is not entitled to summary judgment as to this portion of plaintiff's second claim.

B. <u>Decision not to hire plaintiff as product engineer in the Dragline unit</u>

Defendant asserts that it did not hire plaintiff for an open product engineer position in the Dragline unit in February/March 2004 because he had a reputation for working slowly and needing too much supervision. This is consistent with Moehnke's testimony that he told Randall that he would not recommend rehiring plaintiff, and that defendant was looking for someone in the Dragline unit "who could make a lot of drawings fast, and [plaintiff] was not known for making drawings fast."

28 - OPINION AND ORDER

Nonetheless, plaintiff has shown evidence that is sufficient to create a triable issue of fact as to defendant's proffered reason for the decision to hire a different candidate for this position.  Although defendant's BOLI response indicated that the hiring decision was made by Miotke, Miotke testified that he would have considered plaintiff for the position if he could have, because plaintiff was a former employee who knew the system.  Miotke, who had signed a very positive letter of recommendation for plaintiff a month before the hiring decision was made,[1] testified that he was never asked to consider plaintiff for the position.

The significant difference in the experience and qualifications of plaintiff and the much younger applicant who was selected instead is the most significant factor in creating a triable issue of fact as to the motivation for defendant's decision.  Though defendant placed an advertisement stating that it was seeking someone with experience, it interviewed two individuals in their 20's, and hired Fritz, a 24-year-old applicant who had no previous work experience as an engineer, no previous experience working with mining equipment, no previous dragline experience, and no foundry experience.  Plaintiff, who was 55 years old at the time, had 22 years of engineering experience and 17 years experience working in the Dragline unit.  In addition, defendant's psychologist told Bird, who made the selection

---

[1]Plaintiff drafted the letter.

decision, that Fritz's test scores were below the mean for those seeking work as engineers with defendant, that his vocabulary was somewhat limited, and that his academic skills did not appear to be as strong as would be expected. Though the psychologist recommended Fritz, he did so with reservations. Moreover, there is evidence that it takes several years for a new product engineer to get "up to speed" to do field work.

As noted above, the EEOC found that there was "reasonable cause to believe" that defendant Columbia unlawfully discriminated against plaintiff on the basis of age when it decided to hire a younger candidate instead of rehiring plaintiff. This sort of conclusory EEOC "reasonable cause" letter does not necessarily create an issue of material fact precluding summary judgment. See Coleman, 232 F.3d at 1283-84; Mondero v. Salt River Project, 400 F.3d 1207, 1215 (9th Cir. 2005). However, an EEOC finding of "reasonable cause" to conclude that unlawful discrimination has occurred is admissible as evidence of discrimination. Plummer v. Western Int'l Hotels Co., Inc., 656 F.2d 502, 505 (9th Cir. 1981). Here, the EEOC finding alone would not provide a sufficient basis for concluding that defendant's motion for summary judgment should be denied as to the claim that is based upon defendant's failure to rehire plaintiff in 2004. However, the finding does provide additional support for the conclusion that the motion should be denied.

C. "Combination" position

In June 2004, defendant Columbia hired Dale Gennett to work as a product engineer half time in the Coal unit and half time in the Special Products unit.  As noted above, Gennett was 60 years old at the time, and plaintiff had filed his BOLI age discrimination claim before Gennett was hired.

Defendant correctly notes that Gennett's age precludes plaintiff from establishing the usual prima facie case of discriminatory hiring, because plaintiff cannot show that a younger candidate was selected.  However, plaintiff contends that an issue of fact remains as to this position, because the position was open for a long time before Gennett was hired, and the decision to select an older candidate after the BOLI complaint was filed could suggest that plaintiff's complaint was a motivating factor in the hiring decision, and that the decision not to hire plaintiff for the combination position was motivated by age discrimination.

I agree.  Though the parties have cited and I have found no reported Ninth Circuit decisions addressing this issue, a reported decision from the 11th Circuit supports plaintiff's position.  In Howard v. Roadway Express, Inc., 726 F.2d, 1529, 1535 (11th Cir. 1984), the court concluded that the hiring of a member of the protected class after the plaintiff had filed an EEOC complaint could suggest that the hiring was motivated by the filing of the complaint.  That reasoning applies equally here.  Accordingly, defendant's motion for summary judgment

will be denied as to this as well as the other aspects of plaintiff's claim that is based upon defendant's decision not to recall or rehire plaintiff after he was laid off.

IV. <u>Motions to Strike</u>

A. <u>Defendant's motion to strike plaintiff's exhibit 13</u>

Defendant moves to strike exhibit 13, which appears to be notes written by a BOLI investigator during a BOLI fact-finding conference. I have not relied on this exhibit in analyzing the pending motion for summary judgment, and it is unnecessary to determine at this time whether the exhibit will ultimately be admissible during trial. Accordingly, I deny the motion to dismiss as moot, without precluding defendant from objecting to the exhibit at trial.

B. <u>Plaintiff's motion to strike deposition testimony</u>

Plaintiff moves to strike deposition testimony in which Moehnke referred to statements made by McNiven. I deny the motion, because it appears that the testimony in question is offered not for the truth of the matter asserted, but as evidence of other employees' perception of plaintiff's performance.

**CONCLUSION**

Defendant Columbia's motion for summary judgment (#12) is GRANTED in part and DENIED in part. The motion is GRANTED as to the part of plaintiff's claims that is based upon plaintiff's layoff, and is DENIED as to the part of

plaintiff's claims based upon defendant Columbia's refusal to subsequently recall or rehire plaintiff.

Plaintiff's motion to strike (#23) is DENIED, and defendant's motion to strike (#34) is DENIED as moot, with leave to raise the issue again at trial.

DATED this 17th day April, 2006.


/s/   John Jelderks
John Jelderks
U.S. Magistrate Judge

33 - OPINION AND ORDER